Good morning, Your Honors. Philip Carlin, KAR-LIN for the appellant. Your Honor, there's a number of issues in this case, and Mr. Gordon and I have broken them up, and in my time, I'm going to discuss two of the issues, and Mr. Gordon is going to discuss two. I would ask, sir, that we reserve two minutes for rebuttal. The first issue, if that satisfies you. Yes. Thank you. The first issue I'm going to discuss, sir, is premovability. The very beginning of this case, my client was charged with having committed a crime of moral turpitude within five years of entry. If we look at what he pled to, which was a conspiracy to import or exploration of Iraqi oil against the President's executive order, there's no element of fraud. And in order to get to moral turpitude, it is our contention that there has to be an element of fraud, and he has to be ---- It wasn't part of the plan as the conspiracy has set forth in the indictment to which he pled to have false documents prepared? Yes, Your Honor. I'm not arguing about that, that in the indictment, however, the act of conspiracy has two different parts, one with fraud and one without. In answer to your question very specifically, yes, in the indictment, it was clear that there was talk of forging, for use of a better word, documents that the origination of the oil came from Iran instead of Iraq. And wouldn't that be fraud? That would be attempted fraud. Yes. But I don't see any completed fraud, sir. In other words, to my knowledge ---- It was caught in the act by an undercover agent, but the scheme involved falsifying certificates of origin which were required in order to deal in the oil. That's correct, Your Honor. Okay. Tell me exactly, if you will, what the purpose of the certificate of origin is. I assume, Your Honor, that the ---- is to ensure that it doesn't come ---- the oil, the product doesn't come from a country that there's been an embargo. Well, yeah, I assume that's true, too. But what is it used for? It's used ---- You get it. What do you do with it? I ---- again, and I haven't researched it, but I assume when you attempt to sell the oil, you have to prove the origin of the oil. And that's what it would be used for. So you either give it to the ---- do you give that to the buyer, or do you give it to the government to get ---- leave to import it? Or is that ---- I mean, what do you do with this animal once you have it? To my knowledge, you would give it to the custom service in order to ---- No. You or the buyer? The buyer would give it to the custom service. So you give it to the buyer. To the buyer, yes. And then the buyer gives it to the custom service? Yes, Your Honor. In order to get the oil into this country? That's correct. Which is what benefits you? Yes. All right. So all that being the case, why doesn't this, under a modified categorical approach, plainly qualify? Well, I believe, Your Honor, that these documents were not completed. There was no documents. There was talk of these documents. Is that the reason that you say it isn't, because it wasn't completed in the documents? That's one of the reasons. I also ---- What does that have to do with the conspiracy and scheme? Well, the scheme, Your Honor, even though my client pledged that he was the nothing more, as per the papers, the documents, nothing more than the spokesperson for his cousin, and he had no way to produce the documents. No. He was part of a ---- according to what he pled to, he was part of a conspiracy. That's correct. To commit a fraudulent act. That's correct. Okay. And I gather what you're saying is a conspiracy to commit a fraudulent act isn't fraud, that only the actual commission of a fraudulent act. Well, there has to be some fraud committed, Your Honor. Well, not if a conspiracy to commit a fraudulent act is a crime of moral turpitude. You're saying only a fraud is a crime of moral turpitude. Yes, Your Honor. Not a conspiracy. No. I don't think you'd find too much support for that, but do you have any cases? No, sir, I don't. Yes. As to the other issue I'm going to speak to, Your Honor, it's the 212C issue, which is a relief granted to individuals who are legal permanent residents of the United States with seven years resident status here in the United States. The immigration court found, based on hearsay evidence, that my client never appeared for his, after he was granted legal permanent status, never appeared for the job through which he got his green card. My client unrefutedly stated that he went to the job, worked for two or three days, was not paid, and was told that he was not needed. The hearsay statements, which are admissible, of course, in immigration court, of the officer stated that the owner of the restaurant said business was booming and that he needed him and he never showed up. Well, to start off with, documents presented by the government, pages that are in the transcript, pages 1503-1507, show that this business wasn't in very good shape. Bankruptcy had been filed, tax liens, and I tried to count them this morning, between 10 and 15 different tax liens. Now, the appellant was never given the chance to cross-examine. How could that have been done? By telephone? By bringing him here, assuming the government didn't want to spend the money? Based on hearsay evidence against unrefuted direct testimony, the immigration judge found for the government that he hadn't appeared. It made, at least to me, Your Honor, made no sense. Now, if, in fact, he was a legal permanent resident, he was entitled to 212C relief, which has just been decided in the St. Cyr case in the Supreme Court of the United States. Now, the judge makes a statement that even if this court finds that he was entitled to 212C, she would still deny it as a matter of discretion. The problem with that is that she hasn't heard both sides of the story. The government was allowed to present an officer who testified strictly hearsay as to what the employer told him eight years after the fact. But isn't she saying that even if he did actually report, that she would not give relief because of her view as to the seriousness of this offense? I think that's what it was. I really do. But that's not what 212C is about. 212C is a statute that allows you to come back in and ask for relief, ask for a waiver, ask for a pardon of what is, including moral turpitude crimes, which the Court never reached. Well, except it isn't when she's saying in the alternative, if he is eligible for 212C relief, I wouldn't grant it as a matter of discretion, which, A, we can't review, and, B, isn't she saying that, you know, assuming that he is eligible for it, I find his conduct so offensive to me that I wouldn't grant it? That's what I assume she's saying, Your Honor. But I'm saying I'm not saying that. Not his conduct in failing to report to the job. His conduct in engaging in this conspiracy to import oil in violation of our policies. That certainly could have been her reason, even though it's not in her decision. I certainly can't argue with your thought of why she said she would not grant 212C. But what I do say at the very point, she finds my client not credible in this specific instance, only that he, that the hearsay evidence, she believed and did not believe my client saying he went there for work. I'm saying, Your Honor, that's where you could also take the position if that's why she would say that in her discretion she would not grant 212C relief. I'm not sure which one. Okay. How much time did you plan on giving your co-counsel? I want to finish right now. Thank you, sir. Thank you, ma'am. May it please the Court, Louis Gordon, for Petitioner. I wanted to address the Convention Against Torture. Let me ask you a question. Yes. As I read the BIA's decision, it was based on, I think it's MS. Mitchell's confused sometimes. Instead of our opinion in Zhang, and we have, at least I've been, and regularly have been demanding cases to the BIA when they do not follow Zhang. I assume that you agree with that. Yes, Your Honor, and the government agrees that the BIA used the wrong standard as well. Okay. That leads to my question. If that's so, then do we have a need to address anything else with respect to the Cat claim? Well, if you're assuming automatically that it's going to be remanded, well, I still want to address. I'm not keeping you from addressing it. But you could answer the question of whether it's going to be remanded. My question is, is assuming we remand for reconsideration, relook at the Cat claim. Assuming that you would then believe it's not right to address anything else because the Board did not address it. With respect to the Cat claim, yes. Then I would agree we wouldn't have to address it if you were going to remand. The — however, I did want to advise the Court of an additional citation, which wasn't in my brief. It's a Seventh Circuit case in 1992, 980 F. 2nd, 1129. Judge Posner wrote a decision which I believe is very on point to the situation here. Have you submitted that to the clerks? I spoke with the clerk about it, but I have not yet submitted it.  If we do that. I believe that you can reverse and grant the Petitioner relief under the Convention against Torture. And I believe that one of the errors in this case is that the immigration judge is trying to measure the Petitioner's level of religiosity. And that's not the standard that we should be using. We should be looking at what the persecutor would be thinking and how the persecutor would be viewing the Petitioner. The fact that he converted, not that he was a practicing Christian. Well, the fact — here's the situation. Whether — the truth is, whether he practices 25 percent Christianity and 50 percent whatever the formula is, it's what the Islamic fanatics in Jordan will think of him, not what — not what a church here or his priest here thinks. No, indeed. I mean, that's what Mr. Pipes testified, that he'd be subject to persecution merely because he converted, not whether he was practicing. And there's unrefuted evidence that he was married in the church, that he had a baptism in the church. There's a niece who testified. She's been at the home, and she's seen observance of Easter and Christmas. The children are being raised Christian. I believe — Well, I believe what the IJ was thinking was that a chameleon is just that. And so if he were to be returned to Jordan, he wasn't — he testified he's not taking his family or his son. So most of the dangers that the professor from SC identified are not germane. And he's saying, look, he completely appeared Muslim when it was important for him to appear Muslim, which was when he was incarcerated. And the same thing would happen if he were returned to Jordan. He would simply revert to being 100 percent Muslim, and that would end the problem. Now, that's what the IJ was probably thinking. Why is that wrong? Or why would we be compelled to say otherwise? Well, first of all, these are — there are records out there of his conversion to Christianity. Well, sure, there are. We're talking about the difference between, you know, some small village in Jordan and getting access to a public record in a Catholic church somewhere in Los Angeles. Well, we live in an era of the Internet, Your Honor. I was online last night just looking up references to the petitioner, and I found that, unbeknownst to me, there's a reference to his previous plea agreement in a law review article at the — so I don't believe that it's that difficult to find records. Did you find any references to his marriage? I didn't find any references to his marriage, but I found references to his name and the case right in a two-minute search on the Internet. So I believe that it's very possible for these records to come up. In addition, his cousin who was not convicted here in the United — or convicted in absentia here in the United States, my understanding is in Jordan, I think it's family knowledge that he converted to Christianity. So I think that it's very likely in a small village in Jordan that they would be aware of the situation. Well, I don't quarrel with the small village thing, but he'd go back to Oman, which is a pretty big village. Well, the problem is he still has children being raised as Christians. Even were that scenario to take place, that he reverted to Islam, he still has a Christian wife here in the U.S. There's no evidence that she's going to divorce him. There's children that are being raised as Christians. In the eyes of a religious fanatic, an Islamic religious fanatic, I just don't — they will not view him as someone who's on board with them. And that will subject him to persecution, as the — there were three experts who submitted either declarations or testimony in this case have said. I also wanted to address briefly the issue of due process and touching on Judge Reinhart's question about the discretion. Credibility in this case, questions about it extend throughout the case. The judge is making a decision on discretion partially based on his credibility. Were this Court to reverse the credibility issue, then her discretionary issues would not necessarily be valid, because they would be based on findings of fact that no longer existed. By allowing the testimony to stand of an officer with no cross-examination of the employer, you impugn his credibility and allow for a negative inference to affect the entire case. And he's not given a fair hearing. He's actually deprived of a 212C hearing based on evidence which should not have been upheld. Therefore, I think there's a due process violation going on here. Roberts. Do you want to save two minutes for rebuttal? Yes, Your Honor. Thank you. Good morning. May it please the Court, my name is Cindy Farrier, and I'll be representing the Attorney General in this matter. Do you agree on the CAC claim that needs to be remanded? Our position is that it doesn't need to be remanded unless the Court determines that the credibility finding of the IJ was inappropriate. I don't understand that at all. I mean, Jang set forth one legal standard. MS set forth another. And since Jang, and I've forgotten the names of the cases, but we have basically always remanded to give the BIA a shot. Right. I guess you're saying we should just say it was wrong in reverse and order the CAC relief granted, which I surely don't believe to be your position. No, our position is, obviously we get two bites here. One is that what we believe is that he didn't establish the factual predicate, basically, for a CAC claim, being that he didn't establish a foundation.  There were records indicating his conversion to Christianity. His conversion, yes, that he had been baptized. Yes. But as the IJ found, she didn't believe, in fact, that he was in fact committed or converted in the sense that he would be identified as a practicing Christian. Why is that relevant when his relatives at home and on the record show that he did convert? Whether he's a practicing is irrelevant. It's the fact that conversion that would subject him to persecution and, indeed, even death if he were to return. Well, what the immigration judge found is that she didn't believe that he had established that he would be, again, he had converted to Christianity, and yet when he went to prison, he was a complete Muslim. He didn't practice it, but isn't that irrelevant? If at home, and his relatives say that it is known that he converted, whether he practices... Do you mean at home in here or at home in Jordan? Jordan. Well, I guess the issue is that he did not show, again, I don't mean to be repeating myself, but basically that if he were to go back, there's no evidence to show that he wouldn't, again, become a practicing Muslim. It's irrelevant if the people at home know that he converted. They regard him as a heretic or an apostate, and they kill people for that in Jordan. I guess I didn't read Mr. Pipe's testimony as showing that, in fact, he would be tortured just for his near conversion if he began practicing the Muslim faith once again upon his return. His testimony didn't go that far, I guess I should say. Dr. Pipe's testimony does make clear that if an alien has converted, it is made known, and that is what is believed as his religion when he returns to Jordan, then there is the possibility that he would face retribution. But he didn't go so far as to say that an alien, or I'm sorry, a person who has been baptized in the Christian faith but yet comes back to Jordan and is a Muslim and practicing all the tenets as they are set forth, would be subject to persecution or torture, I guess is the issue here. Do you think the BIA ruled on the question of whether he would be subjected to persecution if his conversion was not legitimate? If he was still a Christian but had once converted, that the BIA ruled that that would not be, he would not be persecuted for that? Or did they rule that he would not be persecuted because they didn't really believe that he was a sincere Muslim, a sincere Christian? How do you read the BIA's ruling? I guess I read it as they find that he didn't meet his burden of proof in showing that he would be tortured, in that the record has contradictory evidence as to whether he's a Christian or a practicing Muslim. So in other words, if he were really a practicing Muslim, they assumed he wouldn't be tortured? I don't know that they actually go that far. The IJ, I believe, says that or seems to infer that. The board seems more to say that there just isn't enough evidence to show one way or another what would happen to him. But I do agree that if the court finds that this basic factual predicate, that the IJ's conclusion that the conversion wasn't enough or that he was a practicing Muslim or a practicing Christian, one or the other, that that was inappropriate, that it does need to be remanded for the appropriate standard application under ZHING instead of SEB. So our position this year is that you don't need to do that because the factual predicate hasn't been established. There's no foundation. He simply isn't credible, so you don't have to go that far. But if you do believe that you do need to go that far, then we believe that remand is appropriate. Can I turn you to another question? And that deals with the executive order. Our cases seem to say that you need an intent to defraud. In looking at the executive order, can you indicate to me where the intent to defraud appears? Well, your cases also say that if there's an inherent element or that even if there's not the specific intent, that if the crime itself is inherently fraudulent, involving fraud, then that that could be enough. And that that is what the board found here. Specifically, they noted that the executive order did not allow for the evading or basically if you evaded or avoided the sanctions or the requirements of the order, then you were going to be guilty of violating the order. So they found that that coupled the evasion and the avoidance of the law, coupled with the fact that the Petitioner had promised that he would provide the fraudulent certificates of origin, was enough to show that there was an inherent fraudulent nature about his actions. I understand the second part. I don't understand. You're saying that if you attempt to avoid or evade any law, that you're then committing a crime of moral turpitude? Or is there something different about that? No, no, no. I don't mean it in that specific. I just mean that the evading, that here the law was intended to avoid, to rule out transactions that had the purpose of evading and avoiding the trade prohibitions of the executive order, and the executive order was created in an effort to protect national security, and that so if you were evading and avoiding those laws. That makes it a crime of moral turpitude. Coupled with, again, coupled with the fact that he had also, he admits in his plea, that he purposely had the intent to provide the false certificates. I said I understand the false certificate argument. Why you are contending with that constitutes fraud. I don't understand the first part of the argument, that if you intend to evade or avoid a regulation. Isn't what happened here what we discussed with counsel. That is, he undertakes to provide a false certificate of origin, indicating that the oil comes from Iran, when it in fact comes from Iraq, to give to his buyer, so that the oil can come into this country, so that he can then get a commission and make sale and benefit from that transaction. Isn't that the fraud? That's the fraud. That's the inherent nature of the fraud, the inherent nature of the fraud that's present in the statute. So it's the specific act, not the, you don't find this inherent in the regulation or in the statute. Not inherent in the regulation. It's inherent in the way that he acted in violating the sanction. So therefore, due to his deliberate deception, the board and the immigration judge properly found that he was convicted of a. . . Let me ask you another question that I don't quite understand. On the 212C waiver issue and voluntary departure, if the determination that this was a serious crime is correct, then does this court have jurisdiction to consider those two? I just don't know the answer. Specifically with regard to voluntary departure, I am not certain of that myself either. With regard to 212C, I believe that the court would have jurisdiction. There's no prohibition to the court's jurisdiction to look at a 212C case because there is a particularly serious crime finding where the jurisdiction, jurisdictional conclusion. So the serious crime finding is irrelevant? For purposes of the 212C. Well, is it irrelevant altogether? No. Is it relevant, then, if not to keep him from that relief? Because that makes him, because that particular finding renders him ineligible for asylum and for withholding of removal. The only, but it doesn't affect the 212C finding. It doesn't affect either waiver. Right. So we need, in your view, then we need to do voluntary departure and waiver on the merits, as it were. Yes, except that we would say that to the extent that it would, well, our point with regard to 212C, I should say, okay, 212H, the board denied it within its discretion, and the Petitioner isn't challenging that particular waiver. So, therefore, you wouldn't have jurisdiction, and there's no need to address that particular waiver anyway. With regard to 212C, the immigration judge and the board made the finding that he was not eligible for the relief because he was not lawfully admitted. So you would need to look at that particular finding. Right. But if you find, and if you found that that particular finding was not appropriate, then you would actually need to remand for the board to further look at the, to examine the discretionary aspect of 212C, because although the immigration judge did deny 212C waiver in his, in her discretion, the board did not affirm that particular discretionary finding. So it would have to go back for a discretionary determination on the 212C waiver if you don't agree that the, that he was ineligible for the relief to begin with because he was not lawfully admitted. Now, let me ask you about the particularly serious crime finding which prevents us, as you say, from getting to the asylum question. Yes. Okay. The main board case which we've been following generally for years is that In re frantescu, and that case says that cases require a case-by-case analysis of, quote, the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and most importantly, whether the type and circumstances of the crime indicate that the alien will be, it will be a danger to the community. Was there any consideration given in the IJ or the BIA's decision to the most important factor whether he will be a danger to the community? They, the, both the board and the immigration judge found quite clearly that his crime was a crime that was serious. That was quite serious, obviously, that violated national security controls. Yes. That doesn't answer the question I just asked. Was there, in reaching that conclusion, a conclusion that the board says the most that he will be a danger to the community? I don't believe that the immigration judge specifically looked to whether or not he now poses a threat to the danger of the community. However, the board's later decisions, QTMT, and other decisions from circuit courts, including this Court, have made clear that the finding that an, well, I should say that simply because you don't look at each and every one of those factors. Yes, that's true. Has there ever been a decision that says that you don't have to look at the most important factor? Well, there's certainly been decisions that have said you can look at two of those factors versus three. Yes, that I understand. I think that you don't have to look, for instance, for instance, the factor is the sentence imposed, and you may not have to look at the sentence imposed. Correct. But when the board says the most important factor in deciding an immigration or deportation case is whether he will be a danger in the future, is there any case that says, although we said that's the most important factor, we didn't mean it, and you don't have to look at it? I don't believe so, but there certainly have been later cases which do not emphasize that particular factor as much as other factors, such as, you know, the nature and the type of the crime or the facts of the commission. Well, you know, I recognize it's a national security case, although not, you know, all national security cases are the same. They didn't threaten to blow up the World Trade Center. He was helping an importation of oil from Iraq instead of Iran, assuming there's a great difference in those two, but that seems to be. So it is a national security case, and you could certainly say by looking at the nature of the offense that it's a serious offense. But in determining whether you're ineligible for asylum, the board seems to have said that you don't just look at the crime, but you look at whether the person is going to be a danger. Well, I believe that you can certainly read from, at least in my mind, the immigration judge's decision and the board's decision that there is the potential for the danger to the community for a person that agreed to such an elaborate scheme and took such an integral role in helping with something that he knew, he knew for a fact was against the law, and yet he continued with the particular crime and carrying it out. And the fact that, you know, he never once took responsibility for it, for his part in that crime. That's right. They could have reached the conclusion that, yes, looking at this person, we think he would do it again if we released him, if we let him stay in this country. And if they said that, there'd be not much question about it. Or they could have looked at him and said, you know, I doubt that this guy's ever going to do anything like this again. He's probably the kind who's going to learn his lesson. And then they might have reached a different conclusion. But whatever they did, whatever they said, having considered that factor, probably would stand. Well, there are the question is whether it can stand when they don't consider that factor. There also is case law, even from this circuit, which agrees with the board's interpretation that if an alien is found to be convicted of a particularly serious crime, that they don't have to do a separate analysis as to whether he constitutes a danger to the community or not. That mainly is referring to, in the context of the statute, where it says an alien shall be found to be convicted of a particularly serious crime, or who is found, now I'm not saying it properly, but under the withholding standard where it lists the 240, or it lists the particularly serious crime determination, it has a comma, and then it says a danger to the community. And. It's a side to a case. Yeah. Yeah, since I'm not making it specifically very clear. The, let's see. This court's decision, which upheld that recently, or more recently, I can't pronounce the case name very well, but it's Kankamalaje. The citation is 335 F3rd 858 at 861 note 2. I'm sorry, 335 F3rd. 858 specifically at 861 note 2. And I guess the point there, though, generally, when the, and I believe even in the Ninth Circuit case that's talking about that, is whether if you have a particular serious crime, whether it constitutes a danger to the community, the analysis may be a bit different for what you're specifically asking me. But I believe that that might be relevant to the courts. Can you cite that in your brief? No, because that was. Would you submit it? Sure. Please. I can certainly do that. And I realize that I'm almost out of time, but the government's position is also that the court lacks jurisdiction to even consider the particularly serious crime finding. There has been recent case law issued since the briefing in this case, which suggests that if an alien raises a, well, it doesn't suggest, but it actually raises a jurisdictional claim, then the court would certainly have jurisdiction to consider the particular serious crime finding. But leaves open the question as to whether the court would actually have jurisdiction over the discretionary, over-discretionary determination of a particular serious crime. Well, this would be a legal question of whether the board considered all the factors. Well, that, in fact, would be. However, Petitioner didn't specifically raise that as a question for the court to answer. So our position would be that there wasn't, in fact, a question which would be raised which would give the court jurisdiction over the claim. Okay. You're over, unless you have something else burning. Yes. So I would just like to, you know, ask the Court our position is that the PFR should be either denied and dismissed or denied in its entirety. Thank you. I wanted to point out to the Court on the particularly serious crime issue that there is evidence in the record by the late Ira Frank, a psychiatrist, that the Petitioner had committed only a single crime, and in his experience there is not. Well, I don't understand what bearing that has on whether it's particularly serious and whether all of the, or any of the Fonseca factors are met because you decide whether he's a danger based upon the nature of the crime that was committed. And this was plainly a threat to national security. So it's just on its face a danger. Well, if we look at the analysis and a threat, it will be a threat to the community. Yes, the community being the United States. The other issue that I did want to point out on that is that the oil was supposed to be sold in Europe and not in the United States. But as far as the issue of the crime was to be sold. Well, my understanding is the oil was supposed to be sold in Europe. Do they need a certificate in Europe? I assume they did, but a buyer that he contacted here was a customs agent. But. I don't understand. Does the record show where the oil was to be sold? There, I believe, is references that it was supposed to be sold in a third country, not in the United States. Well, the whole thing doesn't make much sense unless the document was needed in the third country as well as in the United States. But I thought it was the United States regulation. Well, any violation of the President's order would be a violation of the crime. That's why it was convicted. You mean if you sell oil from Iraq to Saudi Arabia, it's a violation of the President's order? If you were a permanent resident, I believe it is. Oh, this applies to American citizens who engage in transactions anywhere in the world. That's my understanding. I see. I believe I'm out of time. Thank you, counsel. Thank you. The case just argued will be submitted. It's the end of the oral arguments for today. The Court will stand in recess for the day.
judges: D. Nelson, Reinhardt, Rymer